310 N.E.2d 908 (1974)
BOARD OF ZONING APPEALS OF THE CITY OF PLYMOUTH, Indiana, Appellant,
v.
Jay E. HEYDE et al., Appellees.
No. 3-473A43.
Court of Appeals of Indiana, Third District.
May 13, 1974.
*909 William L. Fortin, Stevens, Wampler, Travis & Fortin, Plymouth, for appellant.
Frederick E. Rakestraw, Brown, Brown & Rakestraw, Rochester, for appellees.
STATON, Judge.

I.

STATEMENT ON THE APPEAL
Heyde refused to obey the Board of Zoning Appeals' order to cease and desist the gravel removal operations at the southern end of his eighty-eight (88) acre property. Injunctive relief was sought by the Board against Heyde in the Marshall Circuit Court.[1] The Board alleged in its two (2) legal paragraph complaint that Heyde's gravel removal operation was in violation of a zoning ordinance and that Heyde violated the order which had been issued to cease and desist. A temporary injunction was issued by the Marshall Circuit Court. Upon the trial for a permanent injunction, *910 Heyde contended that the ordinance did not prohibit the activity in which he was engaged and that the Board did not have statutory authority to initiate the order to cease and desist. The Marshall Circuit Court agreed with Heyde and dissolved the temporary injunction. This appeal by the Board presents these issues for our consideration:
ISSUE ONE: Did Heyde violate the zoning ordinance which was passed in compliance with I.C. 1971, XX-X-X-XX, Ind. Ann. Stat. § 53-759 (Burns 1964)?
ISSUE TWO: Did the Board of Zoning Appeals for the City of Plymouth have the statutory authority to issue the cease and desist order upon the original complaint of residents?
Our opinion concludes that Heyde was not in violation of the zoning ordinance and that the Board of Zoning Appeals did not have statutory authority to issue the order for Heyde to cease and desist his gravel removal operations upon the original complaint of residents. We affirm the trial court's judgment.

II.

STATEMENT OF THE FACTS
The southern portion of Heyde's eighty-eight (88) acres was leased to the McMahan-O'Connor Construction Company, Inc. The provisions of the lease allowed the construction company to "... [R]emove, process, and sell any and all sand, gravel, ordinary clay fill dirt, top soil, and/or other aggregates or construction materials found upon, in or under the premises... ." Residents in the area considered the gravel removal operations undesirable and filed their complaint with the Plymouth Board of Zoning Appeals. The complaint requested that the Board find the gravel removal activities in violation of the zoning ordinance and that the Board seek injunctive relief.
A hearing was held before the Board on June 27, 1972 to determine the merits of the complaint.[2] Heyde was found to be in violation of the Plymouth Zoning ordinance since the gravel removal operation was, in the Board's opinion, occurring within an "urban area" subject to its jurisdiction. The Board ordered Heyde to cease and desist from any further gravel removal operations. Heyde disobeyed the Board's order. The Board sought injunctive relief as provided by I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-791 (Burns 1964). A temporary order issued by the Marshall Circuit Court prohibited the further extraction and removal of gravel from Heyde's property until a determination could be made on the merits.
During the trial on the merits, numerous exhibits were entered into evidence showing Heyde's eighty-eight (88) acres in relationship to the zoning jurisdiction of the City of Plymouth and the surrounding residences. Each exhibit attempted to establish that Heyde's eighty-eight (88) acres came within the "urban area" as defined in I.C. 1971, XX-X-X-XX, supra. Our examination of those exhibits and the testimony supporting them reveals that a northern portion of Heyde's eighty-eight (88) acres did in fact fall within what is deemed an "urban area." The northern portion of the eighty-eight (88) acres is fifty (50) feet wide and about two hundred twelve (212) feet long. None of the gravel removal operation in the southern portion of the eighty-eight acres was shown to be within the quarter square mile area containing eight or more residences. We find no exhibit or direct testimony in the Board's case in chief to the contrary.[3]
*911 Ordinance 724, as amended by ordinance 930 and 1012, provided that the enforcement of zoning restrictions therein "... shall be enforced by the Building Commissioner," and that "... [a]ny decision of the Building Commissioner made in the enforcement of this ordinance may be appealed to the Board of Zoning Appeals ... ." An additional provision of the ordinance vested the Board with the standard power to grant variances. After the hearing on the merits, the trial court rendered the following judgment:
"This matter was submitted upon the request for temporary and permanent injunction. The Court having heard the evidence, being duly advised in the premises and having had this matter under advisement, now finds that the complained of activity of the defendants is not within an `urban area' as defined by Indiana Statutes 53-759. Eight or more residences within any quarter mile square area permits the passing of ordinances prohibiting excavation within that quarter mile square, but it does not prohibit excavation on the adjoining 10, 40[,] 160 or 1,000 acre tract whether owned by the same or different persons.
"A completely prohibitory ordinance, if at all possible to be constitutional, must be based on the police power of a municipality for the protection of the health, welfare and safety of its citizens. There is no showing in this case of any need for total prohibition.
"Under Legal Paragraph II of Complaint, the Court finds that the Board of Zoning Appeals does not have the jurisdiction and authority to hear original complaints by residents and issue cease and desist orders which require on appeal therefrom by defendants.
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT THAT the Temporary Restraining Order heretofore issued is dissolved.
"IT IS FURTHER ORDERED THAT plaintiff take nothing by way of either paragraph of complaint and both the temporary injunction and permanent injunction are denied.
"Costs v. plaintiff; however, this being a municipal corporation, no costs are taxed."

III.

STATEMENT OF THE ISSUES
This appeal presents two issues for our consideration. They are:
ISSUE ONE: Did Heyde violate the zoning ordinance which was passed in compliance with I.C. 1971, XX-X-X-XX, Ind. Ann. Stat. § 53-759 (Burns 1964)?
ISSUE TWO: Did the Board of Zoning Appeals for the City of Plymouth have the statutory authority to issue the cease and desist order upon the original complaint of residents?
Our opinion concludes that both issues should be answered in the negative. We affirm the trial court's judgment.

IV.

STATEMENT ON THE LAW

ISSUE ONE: Violation of Zoning Ordinance.

The Board has the burden of proving both an applicable zoning ordinance and its violation when seeking injunctive relief.[4] DeSchamps v. Board of *912 Zoning Appeals of the City of Kokomo (1961), 241 Ind. 615, 174 N.E.2d 581. An ordinance prohibiting the extraction of mineral resources must be shown in the present case. Our Legislature has limited the extent to which zoning ordinances may restrict such activity. This limitation is set forth in I.C. 1971, XX-X-X-XX, supra, as follows:
"Nothing in this act [§§ 53-701 - 53-795] shall be deemed to authorize an ordinance by law, rule or regulation which would prevent, outside of urban areas, the complete use and alienation of any mineral resources or forests by the owner or alienee thereof. For the purpose of this section, urban areas shall include all lands or lots within the limits of incorporated cities and towns and any other lands or lots used for residential purposes where there are eight [8] or more residences within any quarter mile square area and such other lands or lots as have been or are planned for residential areas contiguous to incorporated cities or towns."
The evidence clearly demonstrates that only a very small portion of the northern eighty-eight (88) acre parcel was within the quarter mile square containing eight or more residences. None of the gravel removing operation, which was taking place in the southern portion of the eighty-eight (88) acre parcel was remotely involved. Upon hearing this evidence, the trial court concluded in its judgment:
"Eight or more residences within any quarter mile square area permits the passing of ordinances prohibiting excavation within that quarter mile square, but it does not prohibit excavation on the adjoining 10, 40[,] 160 or 1,000 acre tract whether owned by the same or different persons."
It is the Board's contention that this conclusion of law in the court's judgment is error. If error does exist, we must accept the proposition of law that the inclusion of a part of a parcel within the "urban area" is an inclusion of the whole. We cannot accept this proposition of law. If an entire parcel of land could be included within the quarter mile square as part of the "urban area" when only a few feet physically came within the precise statutory limitations, the quarter mile square definition would lose any significant definitional meaning as well as any practical application for the purpose of zoning. Furthermore, any relationship between the statutory definition of "urban area" and the area it purports to cover would evaporate and become meaningless when tested by practical application. The proposition of law urged by the Board would be both illogical and absurd in its application to the facts in this case. Its reach exceeds the legislative goal. Pryor v. State (1973), Ind., 296 N.E.2d 125; Marks v. State (1942), 220 Ind. 9, 40 N.E.2d 108.
The City of Plymouth was without statutory authority to prohibit the extraction of gravel from the southern portion of Heyde's property which was well outside the "urban area." Therefore, the Board failed to carry its burden of proof showing an applicable zoning ordinance and its violation. DeSchamps v. Board of Zoning Appeals of the City of Kokomo, supra. Injunctive relief was properly denied by the trial court. We find no error.[5]

ISSUE TWO: Statutory Authority to Issue Cease and Desist Order.

Original jurisdiction was assumed by the Board when it considered the complaint of area residents and issued its *913 cease and desist order.[6] This assumption of original jurisdiction by the Board is fatal to the cease and desist order. It is void. The Board had only appellate jurisdiction.[7]
The Board had appellate jurisdiction to hear appeals from decisions rendered by administrative officials charged with the enforcement of zoning ordinances. This would have been the proper procedural posture in the present case had the statute and ordinance been followed. The City of Plymouth ordinance provides:
"This ordinance shall be enforced by the Building Commissioner... . Any decision of the Building Commissioner made in the enforcement of this ordinance may be appealed to the Board of Zoning Appeals by any person claiming to be adversely affected by such decision... ."
We find it hard to conceive of more clear and unambiguous language to negate the proposition that the Board had original jurisdiction to hear the complaint of area residents which alleged a violation of the zoning ordinance.
*914 Equally untenable is the contention that the Board was relying upon its power to issue "Work Stoppage Orders" pursuant to I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-781 (Burns 1964) and I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-782 (Burns 1964). Such a contention by the Board necessarily presupposes an initial duty to enforce. The ordinance gives none. In the present case, an effective administrative remedy is provided for the enforcement of a zoning ordinance. Full compliance with and exhaustion of this administrative remedy is necessary to trigger the appellate jurisdiction of the Board. Board of Zoning Appeals of the Town of East Gray v. Stevens (1968), 142 Ind. App. 200, 233 N.E.2d 672. Work stoppage orders from the Board are predicated upon an appeal from the decision of an administrative official. See I.C. 1971, XX-X-X-XX and I.C. 1971, XX-X-X-XX, supra.
The Board exceeded its jurisdictional power when it issued the cease and desist order without first having a pending appeal from the Building Commissioner before it. Tomlinson v. Marion County Plan Commission & Hatcher, supra; Anderson Lumber & Supply Co. v. Fletcher (1950), 228 Ind. 383, 89 N.E.2d 449. Therefore, the cease and desist order was void.

V.

DECISION OF THE COURT
Heyde was not in violation of any zoning ordinance passed by the City of Plymouth. The Board of Zoning Appeals failed to carry its burden of proof which would have entitled it to injunctive relief. Neither an applicable ordinance nor a violation was proven.
The cease and desist order issued by the Board of Zoning Appeals was void. The Board of Zoning Appeals has no original jurisdiction to initiate such action.
Therefore, the judgment of the trial court should be and the same hereby is affirmed.
HOFFMAN, C.J., and GARRARD, J., concur.
NOTES
[1] I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-791 (Burns 1964) empowers a Board of Zoning Appeals to seek such equitable relief.
[2] Zoning restrictions upon the use and alienation of any mineral resource is limited to "urban areas" under I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-759 (Burns 1964).
[3] We note that the Board has asserted on appeal that the evidence is contrary to such a conclusion. In this respect, it appeals from a negative judgment and its contention presents nothing for this Court's consideration. Lindenborg v. M & L Builders & Brokers, Inc. (1973), Ind. App., 302 N.E.2d 816.
[4] I.C. 1971, XX-X-X-XX; Ind. Ann. Stat. § 53-791 (Burns 1964) provides:

"... [T]he board of zoning appeals ... may institute a suit for injunction in the circuit court of the county to restrain an individual or a governmental unit from violating the provisions of this act [§§ 53-701 - 53-795] or of an ordinance enacted pursuant to its terms. ..." (Our emphasis)
[5] We observe that neither party has contended that gravel is not a mineral resource within the scope of the statute. Unaided by prior Indiana case law in answering this question, we feel justified in concluding that it is a mineral resource for the purposes of the statute. The language "any mineral resource" indicates a broad scope was intended and the case law of other jurisdictions indicates that such substances are included in the normal commercially accepted definition of the term. See 27 Words and Phrases 311, 324 and Supplement at 21.
[6] This issue is discussed to add clarity and continuity to the opinion. Issue One is sufficient in and of itself to affirm the trial court's judgment. The Board of Zoning Appeals of the City of Plymouth appealed from a denial of injunctive relief. Neither I.C. 1971, XX-X-X-XX, Ind. Ann. Stat. § 53-791 (Burns 1964) nor DeSchamps v. Board of Zoning Appeals of City of Kokomo (1961), 241 Ind. 615, 174 N.E.2d 581 required any form of original action prior to seeking injunctive relief. The unnecessary portion of the trial court's general findings may be treated as mere surplusage on appeal. See Tomlinson v. Marion County Plan Commission & Hatcher (1954), 234 Ind. 88, 122 N.E.2d 852.
[7] I.C. 1971, XX-X-X-XX through XX-X-X-XX, Ind. Ann. Stat. § 53-777 through 53-779 (Burns 1964) provides:

"53-777. Rules and records of board of zoning appeals.  The board of zoning appeals shall adopt such rules concerning the filing of appeals and applications for variances and exceptions, giving of notice and conduct of hearings as shall be necessary to carry out their duties under the terms of this act. [§§ 53-701 - 53-795].
The board shall keep minutes of its proceedings, keep records of its examinations and other official actions and shall record the vote on all actions taken. All minutes and records shall be filed in the office of the board and shall be a public record."
"53-778. Powers and duties of board of zoning appeals  Exercise of authority.  The board of zoning appeals shall:
1. Hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or regulation adopted pursuant to sections 56 through 65 [§§ 53-756 - 53-766] of this act.
2. Permit and authorize exceptions to the district regulations only in the classes of cases or in particular situations as specified in the ordinance.
3. Hear and decide special exceptions to the terms of the ordinance upon which the board is required to act under the ordinance.
4. Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.
In exercising its powers, the board of zoning appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from as in its opinion ought to be done in the premises, and to that end shall have all the powers of the officer or board from whom the appeal is taken."
"53-779. Appeals to board  Specifications and filing  Transmission of documents by official or board.  An appeal taken from the requirement, decision or the determination made by an administrative official or board charged with the enforcement of any ordinance pursuant to sections 56 through 65 [§§ 53-756 - 53-766] of this act shall be filed with the board of zoning appeals.
The appeal shall specify the grounds thereof and shall be filed within such time and in such form as may be prescribed by the board by general rule.
"The administrative official or board from whom the appeal is taken shall, upon request of the board of zoning appeals, transmit to it all documents, plans and papers constituting the record of the action from which an appeal was taken." (Our emphasis).