Jude J. UHL, Mary Jean Uhl, Francis M. Stum, Helen Stum, Larry E. Fraze, Karen Fraze, Karl E. Eggenspiller, Jr., Robert Macy, Linda Macy, Charles E. Graninger, Jr., Mary Graninger, Oscar Elliott, Barbara Elliott, Carlyst O. Simuel, Geneva Simuel, Carl J. Uhl, Mary Uhl, Robert Jackson, Imogene Jackson, McGlenon Rone, Bonnie Rone, Robert W. Smith and Norman Smith, Plaintiffs-Appellants,

v.

LITER'S QUARRY OF INDIANA, INC., Eugene Liter, Robert T. Liter, Liter's Quarry, Inc. and Board of Commissioners of the County of Clark, Defendants-Appellees.

No. 1–478A87.

Court of Appeals of Indiana, First District.

Jan. 22, 1979.

Edward A. Pollen, Montgomery, Elsner & Pardieck, Seymour, for plaintiffs-appellants.

Theodore L. Sendak, Atty. Gen. of Indiana, Robert C. Swain, Deputy Atty. Gen., Indianapolis, Allen R. Brown, Robb L. Smith, Louisville, Carlo B. Coleman, Jeffersonville, for defendants-appellees.

ROBERTSON, Judge.

Plaintiff-appellant Jude J. Uhl (Uhl) and certain other residents of Clark County appeal from a partial summary judgment order in favor of defendants-appellees Liter's

Quarry of Indiana, Inc., Eugene Liter, Robert T. Liter, Liter's Quarry, Inc. (collectively referred to herein as Liter), and the Board of Commissioners of the County of Clark (Board).

Uhl brought suit in four counts to enjoin the operation of Liter's stone quarry in Clark County, and sought damages and injunctive relief for common law nuisance. After the filing of cross-motions for summary judgment, the trial court ruled in favor of Liter on all but the nuisance count. The trial court expressly directed an order pursuant to Ind.Rules of Procedure, Trial Rules 54(B) and 56(C), and this appeal followed.

■ Uhl first asserts error in the trial court's failure to make special findings of fact in accordance with his motion praying therefor. However, "[f]indings of fact are inappropriate when there are no issues of fact, which is the case when summary judgment is granted." *Sekerez v. Lake County Board of Commissioners,* (1976) Ind.App., 358 N.E.2d 140, 144.

Uhl next alleges error in four interrelated issues which will be considered together as they all deal with the applicability of Clark County Ordinance Number 10 (Ordinance) to the facts at bar. The crux of Uhl's contention is that the quarry operation in issue is located in an urban area within the terms of Ind.Code 18–7–5–61, which in relevant part provides:

Nothing in this act [18–7–5–1—18–7–5–99] shall be deemed to authorize an ordinance by law, rule or regulation which would prevent, outside of urban areas, the complete use and alienation of any mineral resources or forests by the owner or alienee thereof * * *

The Ordinance, which was promulgated pursuant to the authority in IC 18–7–5–1 *et seq.,* apparently requires a stone quarry operator to obtain a permit as a prerequisite to the commencement of operations. The argument, therefore, is that since the quarry is within an urban area, the Ordinance is applicable to Liter and his failure to obtain a permit renders his operation illegal. Conversely, if the quarry is outside an urban area, IC 18–7–5–61 applies, and Liter need not comply with the permit requirement.

In a closely related case, we defined "urban areas" as

(1) all lands or lots within the limits of incorporated cities and towns; (2) lands or lots used for residential purposes where there are eight [8] or more residences within any quarter mile square area; and (3) lands or lots as have been or are planned for residential areas contiguous to incorporated cities or towns.

*Clark County Board of County Commissioners v. King, et al.,* (1974) 160 Ind.App. 152, 158–9, 310 N.E.2d 560, 564. Also, we have held that if a tract of land is partially in an urban area, operations are protected by IC 18–7–5–61 if located only on that portion of the tract that is not in the urban area. *Board of Zoning Appeals of the City of Plymouth v. Heyde, et al.,* (1974) 160 Ind. App. 165, 310 N.E.2d 908. In the case at bar, Uhl makes no contention with respect to the second category set forth in *Clark County, supra.* With respect to the third category, the record reveals that the Board had declared two miles outside of the city limits of Jeffersonville, Indiana, as reserved for residential growth. Therefore, the Ordinance would apply if Uhl's operations were located within two miles of the Jeffersonville city limits.

■ Resolution of this issue is controlled by the following stipulations of fact which were read into the record in the court below:

It is further admitted and stipulated that said tract [upon which Liter's quarry is located] is not within the corporate limits of the City of Jeffersonville, Indiana. It is further admitted and stipulated that a part of said tract [3.8 acres] is within the two mile zone outside the City Limits of the City of Jeffersonville, Indiana * * The Plaintiffs will stipulate that at the time of the filing of this lawsuit . . the additional acreage of approximately three point eight [3.8] acres was not then being used for quarrying purposes.

"Stipulations of fact which have neither been set aside or withdrawn by the parties are conclusive both upon the parties and the court." *Matter of Estate of Miller,* (1977) Ind.App., 359 N.E.2d 270, 273 (citations omitted). Uhl does not claim the stipulations were expressly withdrawn or set aside. As such, they were binding on Uhl and properly foreclosed the inquiry of whether the quarry was located within two miles of the Jeffersonville city limits. *See Clark County and Board of Zoning Appeals of the City of Plymouth.*[1]

■■■ Notwithstanding this finding, Uhl contends that the Ordinance is not rendered inoperative by IC 18–7–5–61 because the Ordinance is merely *regulatory* and does not *prevent* the free use of land outside of urban areas. We first note that Uhl has neglected to quote the relevant portions of the ordinance in his brief. The Ordinance comprises approximately sixty pages of the record, and we are unwilling to search for that which should be provided. *See* Ind. Rules of Procedure, Appellate Rule 8.2(B)(4). Such a failure may preclude review. *See Tomlinson, et al. v. Marion County Plan Commission* (1954) 234 Ind. 88, 122 N.E.2d 852. Nevertheless, we feel the Legislature amply expressed their intent in IC 18–7–5–61:

> Nothing in this act shall be deemed to authorize [a] . . . *regulation* which would prevent . . . *the complete use* and alienation of *any* mineral resources * * * [Emphasis added].

In this case, the denial of a permit would preclude Liter from operating a stone quarry. Additionally, when the Legislature has expressed their interest in an area, local regulations in conflict therewith must fall.

1. Since the trial court was not required to make findings of fact (*Sekerez, supra*), statements by the trial court unnecessary to the vitality of the order are mere surplusage. *See Board of Zoning Appeals of the City of Plymouth, supra.* The stipulations of fact controlled whether the location of the stone quarry was within an urban area. Therefore, the trial court's indication that the location of the quarry was decided in *Clark County, supra,* and that the doctrine of *res judicata* barred reconsideration thereof, is not an issue that we need to express an opinion on.

*See Graham Farms, Inc. v. Indianapolis Power & Light Co.,* (1968) 249 Ind. 498, 233 N.E.2d 656.

■■■ Uhl next asserts that IC 18–7–5–61 establishes invalid classification schemes in contravention of the equal protection clause of the Fourteenth Amendment t the United States Constitution.[2] Statutes are presumptively valid, and in the absence of a suspect classification or fundamental rights (of which no contention is made), a statute will survive an equal protection attack if the scheme has a rational basis and bears a substantial relationship to legitimate state purposes. *Johnson County Rural Electric Membership Corp. v. Public Service Company of Indiana, Inc.,* (1978) Ind.App., 378 N.E.2d 1; *Sidle v. Majors,* (1976) 264 Ind. 206, 341 N.E.2d 763; *Board of Commissioners of Howard County v. Kokomo City Plan Commission,* (1975) 263 Ind. 282, 330 N.E.2d 92. Uhl carries the burden of establishing the lack of a rational basis, or that the scheme is arbitrary. *Kokomo City Plan Commission, supra.*

Initially, we believe the *purpose* of the statute in issue serves a substantial state interest. IC 18–7–5–1 declares:

> It is the object of this legislation to encourage local units of government to improve the present health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities to the end that highway systems be carefully planned, that new community centers grow only with adequate highway, utility, educational, and recreational facilities; that the needs of agriculture, industry and business be

2. Although Uhl presents a broadside constitutional attack, he devotes the entire argument section of his brief to the denial of equal protection because of "invalid classifications." Hence, the contentions based on various other sections of the Indiana and United States Constitutions are waived. *See* Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Kokomo City Plan Commission, infra.*

recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds.

Further, the Legislature adopted permissible means to implement this policy by conferring authority upon local governments to evaluate and institute measures appropriate for the particular needs of a given locality. The statute, therefore, bears a substantial relationship to legitimate state concerns. Thus, our inquiry is whether the classification scheme is reasonable in the context of the purpose to be served.

Since IC 18–7–5–61 exempts from regulation that which might otherwise be prohibited by ordinance (the complete use and alienation of non-urban lands of any mineral resource or forest by such owner), Uhl complains in his brief that the following classifications are invalid:

(1) [M]ining operations as opposed to other uses of land; (2) mining operations in counties under *I.C.* Section 18–7–5–1 et seq. as opposed to mining in those counties coming under the other, alternative zoning enabling acts; and (3) mining operations 'outside of urban areas,' as 'urban areas' are defined in the statute.

These contentions are without merit. First, the statute speaks to all mineral resources and forestry, not just mining. Moreover, the unique nature of mineral extraction would justify legislation relating solely thereto. To accept Uhl's assertion would result in a commandment to the Legislature that all enactments pertaining to the use of land must apply to all conceivable uses.

Secondly, Uhl contends that because an ordinance adopted pursuant to IC 18–7–4–1 *et seq.,* or IC 18–7–2–1 *et seq.* would not contain a prohibition similar to IC 18–7–5–61, the Legislature has created an invalid classification scheme. In essence, Uhl is questioning the wisdom of Clark County in adopting IC 18–7–5–1 *et seq.* instead of IC 18–7–4–1 *et seq.* These two statutes, however, do not create a statutory classification; rather, they simply offer alternatives to local government. This complaint, therefore, is better addressed to local public officials responsible for the adoption of such powers.

Uhl's third contention relates to the statutory urban/non-urban classification. Classification schemes based on population density have received the sanction of our courts. *See Evansville-Vanderburgh Levee Authority District v. Kamp,* (1960) 240 Ind. 659, 168 N.E.2d 208. Due to the similarity of the urban/non-urban distinction to a scheme based on population density, the approval voiced in *Kamp* is equally applicable here. Furthermore, the Legislature expressly intended to enhance the orderly planning and expansion of communities by the enactment of IC 18–7–5–1 *et seq.* To achieve this end, it would not be arbitrary for the Legislature to delegate to local governments the authority to impose reasonable restrictions on private enterprise in an urban area so as to further the interests of the community as a whole. On lands not within an urban area, however, the interests of the community in orderly growth and expansion are of decreasing importance and the interests of private land owners commensurately greater. Therefore, the exemption of non-urban areas is not without a rational basis.

Lastly, Uhl asserts that the proscriptive effect of IC 18–7–5–61 will hinder the performance of other duties bestowed upon county officials by other statutes. IC 18–7–5–61, however, only limits the use of the powers conferred by IC 18–7–5–1 *et seq.,* and hence does not impinge upon the performance of other governmental functions.

Finding no reversible error, the trial court is affirmed.

LYBROOK, P. J., and LOWDERMILK, J., concur.